# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PARK PLUS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) CIVIL ACTION NO. _____ | |
| BOOMERANG SYSTEMS, INC., ) | |
| JOHN DOES 1-10 and ABC ) | |
| Corporations, 1-10 ) | |
| ) | |
| Defendant. ) | |
| ) JURY TRIAL DEMANDED | |
| _____ ) **ORIGINAL COMPLAINT** | |

Plaintiff **PARK PLUS, INC.** ("Park Plus"), by and through its undersigned attorneys, hereby alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2201 and 2202, the Federal Declaratory Judgment Act, and under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 in that this case arises under Acts of Congress relating to patents, 35 U.S.C. § 1 *et seq.* and relating to trademarks, 15 U.S.C. § 1051 *et seq.;* under 28 U.S.C. § 1338(b) for claims of unfair competition; under 28 U.S.C. § 1337(a) for claims in excess of $10,000.00 for under anti-competitive conduct in restraint of trade in

1

violation of the Sherman Anti-Trust Act (wrongful assertion of misappropriation of trade secrets), 15 U.S.C. §§ 1 - 7; and under 28 U.S.C. § 1367(a) for state law claims.

2. This Court has in *personam* jurisdiction over the Defendant corporation pursuant to NJ Rule 4:4-4(a)(6) and Fed. R. Civ. P. 4(e) because the Defendant committed a tort in whole or in part in New Jersey state and further regularly transacts business in New Jersey.

3. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

4. Plaintiff PARK PLUS, INC. is a Delaware corporation with its principal place of business located at 31 Iron Horse Road, Oakland, New Jersey.

5. Defendant BOOMERANG SYSTEMS, INC. is a Delaware corporation with its principal place of business located at 30B Vreeland Road, Suite 100, Florham Park, New Jersey 07932.

## FACTS

6. Based in Oakland, New Jersey, Park Plus is in the business of designing, developing, marketing, and selling a wide range of mechanical storage and retrieval systems for the parking and warehouse industries, including valet, semi-automatic and fully automated parking systems. Currently Park Plus has the enviable reputation of

having installed the largest fully automated parking system in North America. The Park Plus AGV (automated guided vehicle) technology is based on guided omni-directional car shuttles managed by artificial intelligence with software that controls movement using wireless technology.

### Park Plus' Unique and Novel AGV Technology

7. Park Plus' AGV system incorporates a unique, novel, and proprietary AGV drive- unit (the "Park Plus AGV Drive Unit") as well as proprietary guidance systems, wheel node designs, AGV trays, and loading bay designs, for which unique and novel design Park Plus has submitted a patent application to the United States Patent and Trademark Office ("USPTO"), a true copy of which is attached hereto as **"Exhibit A"** (the "Park Plus Patent Application").

Hereinafter, the unique and novel Park Plus' AGV Drive Unit and related proprietary technology used by Park Plus to market and sell its AGV automobile parking systems, including but not limited to that set forth in the Park Plus Patent Application are collectively referred to as the "Park Plus AGV Technology."

8. At all times relevant hereto, particularly prior to April 1, 2011, Park Plus had already designed, built, and made fully-operational **two** (2) fully automated automobile parking systems in the United States, using the Park Plus and other proprietary -related technology in both projects.

9. As of March, 2011, Park Plus had a reasonable probability of increasing and expanding its business in the AGV automobile parking systems market, including a reasonable expectation that Park Plus would enter into many additional, valuable contracts with customers for the purchase of Park Plus AGV Technology-based automobile parking systems.

### Boomerang Guidance Technology utilizes a "Slewing Ring."

10. On information and belief, Defendant Boomerang has developed a form of AGV system which utilizes a guidance system drive unit design based upon a "slewing ring" technology.

Hereinafter, Defendant Boomerang's AGV drive system based upon a slewing ring technology, including but not limited to the version for which Boomerang received a patent in late 2010, is referred to as the "Boomerang AGV Slewing Ring System."

11. On information and belief, Boomerang has been unable to develop the underlying technology and design concepts comprising the Boomerang AGV Slewing Ring System beyond even the "beta" test site stage, and Boomerang has been unable to put the Boomerang AGV Slewing Ring System into production at a commercially competitive price.

12. On information and belief, Defendant Boomerang has to the present day been unable to deliver any version of a fully-functional, operational AGV automobile

parking system to any customer anywhere, including but not limited to any system utilizing the "Boomerang AGV Slewing Ring System" apart from a prototype, "beta" project located at Crystal Springs, NJ.

### Boomerang's Anticompetitive Scheme

13.   Until approximately 2006, Boomerang did not substantially compete with Park Plus in any part of the automobile parking garage system market, including the automated portion thereof.  Instead, Boomerang, which has its background in the manufacture of simple amusement park equipment, has used sophisticated investment banking relationships and other investor resources to accumulate a "war chest" of funds to "break into" the parking garage system market.

14.   In particular, Boomerang has raised (and expended) over $70 million during the past four years without ever being able to bring to market a successful automated parking garage design that can be delivered at a commercially reasonable cost.  In fact, upon information and belief, Boomerang has continuously operated at a loss since 2006.

15.   Because of Boomerang's inability to internally develop a functional automated parking garage system, Boomerang elected to pursue an anticompetitive scheme against the market leader, Park Plus, whereby Boomerang would damage or destroy Park Plus in the market with unfounded misappropriation of trade secret claims,

and thereafter acquire Park Plus and/or its market-leading AGV technology for a minimal amount of its investor funding.

### Boomerang Claims Park Plus Misappropriated Boomerang Technology

16. Notwithstanding the fact that the Park Plus AGV Technology is unique and novel and obviously different from any used by Defendant Boomerang, Boomerang has publicly claimed and announced, in furtherance of its anticompetitive scheme described above, that Park Plus, and its agents and employees, have misappropriated Boomerang trade secrets and other proprietary technology, and thereafter used the same in the marketing and sale of in the Park Plus AGV Technology-based automobile parking systems in violation of Boomerang's rights therein and thereto.

### Pressure on Prospective Customers

17. To further its anticompetitive scheme against Park Plus described above, officers, agents, and employees of Boomerang repeatedly misrepresented to prospective customers for parking garage systems, in trade group meetings and in other contexts, that Park Plus had misappropriated Boomerang trade secrets and other proprietary technology, and that Boomerang intended to sue any person or entity that purchased a parking garage system from Park Plus along with Park Plus for such misappropriation.

18. Defendant Boomerang knew of purchase contracts and/or proposed purchase contracts between Park Plus and its customers, and Defendant Boomerang, through its agents and employees, intentionally interfered with such actual or prospective Park Plus contracts with intent to harm Park Plus thereby.

19. Defendant Boomerang has deliberately without cause interfered with the formation and execution of additional and further Park Plus purchase contracts as set forth below.

20. Defendant Boomerang intentionally or negligently published oral and written statements through letters and phone calls to Park Plus' actual or prospective customers that were false and misleading in accusing Park Plus of "misappropriation" or "willful infringement" that implies to such customers that Park Plus has engaged in unethical practices and business impropriety.

21. The Defendants' use in commercial advertising or false or misleading allegations that Park Plus' AGV systems "misappropriate" or "willfully infringe" Boomerang's proprietary technology and/or trade secrets misrepresents the qualities and characteristics of Park Plus' AGV systems and tends to make them less marketable.

22. Defendants have made numerous and vexatious telephone calls and sent numerous and vexatious communications to Park Plus's actual or prospective customers that Park Plus's AGV systems were based upon "misappropriated"

Boomerang technology and threatening them with lawsuits and millions of dollars in damages and attorney fee awards. Such statements are untrue and misleading, were made without any privilege or justification and were made deliberately without reasonable cause to influence or tend to influence the public not to buy Park Plus AGV automobile parking systems. These vexatious communications by Boomerang agents and/or employees evidence an abundance of bad faith on Boomerang's part.

23. As a result of Defendant Boomerang's unlawful activities, Park Plus has suffered damages, including injuries to its goodwill and reputation, reductions in sales, and losses of profits from an inability to market and sell its products and other damages presently estimated to be in excess of $3.8 million.

### Proof of Non-Misappropriation Ignored by Boomerang's Lawyer.

24. Park Plus and its attorneys met with Boomerang's officers and attorneys in July, 2012 in a good faith effort to demonstrate to Boomerang that Park Plus' products were uniquely different and easily distinguishable from any Boomerang product and/or design, and even disclosed, pursuant to an executed confidentiality agreement signed by Boomerang's attorney, confidential Park Plus information to prove, once and for all, that Boomerang's allegations of misappropriation by Park Plus were unfounded and wrongful.